**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | **3:20-CR-282** |
| | : | **(JUDGE MARIANI)** |
| SCOTT MARINELLI, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

On November 3, 2020, Defendant Scott Marinelli was charged in a twelve count

Indictment (Doc. 1) with six counts of wire fraud in violation of 18 U.S.C. § 1343 and six

counts of aggravated identify theft in violation of 18 U.S.C. § 1028A(a)(1). (*See generally*

Doc. 1). As summarized by the Indictment,

> [b]eginning on an unknown date, but at least by in or about November 2017,
> and continuing through in or about January 2019, in the Middle District of
> Pennsylvania and elsewhere, MARINELLI knowingly devised, intended to
> devise, and participated in a scheme and artifice to defraud victims who
> intended to sell real estate for profit, and to obtain money and property by
> means of materially false and fraudulent pretenses, representations, and
> promises.

(*Id.* at ¶ 4).

Presently before the Court is Defendant's Motion for Bill of Particulars (Doc. 67) and

Motion for Production of *Brady Giglio* Pertaining to Guilt/Innocence or Sentencing Phases

(Doc. 69), both of which are fully briefed. The Court will discuss both Motions below.

## II. MOTION FOR BILL OF PARTICULARS (DOC. 67)

Federal Rule of Criminal Procedure 7 provides in relevant part that "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." FED. R. CRIM. P. 7(c)(1). The rule further states that "[t]he court may direct the government to file a bill of particulars. The defendant may move for a bill of particulars before or within 14 days of arraignment or at a later time if the court permits." FED. R. CRIM. P. 7(f). "[T]he granting of a bill of particulars remains a discretionary matter with the trial court." *United States v. Addonizio*, 451 F.2d 48, 64 (3d Cir. 1971). "The denial of a motion for a bill of particulars does not amount to an abuse of discretion unless the deprivation of the information sought leads to the defendant's inability to adequately prepare his case, to avoid a surprise at trial, or to avoid the later risk of double jeopardy." *Id.*

"The purpose of the bill of particulars is to inform the defendant of the nature of the charges brought against him to adequately prepare his defense ..." *Id.* at 63-64. "A bill of particulars should fulfill this function 'when the indictment itself is too vague and indefinite for such purposes.'" *Id.* at 64 (quoting *United States v. Haskins*, 345 F.2d 111, 114 (6th Cir. 1965)). As the Third Circuit explained,

> A bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation. *See, e.g., United States v. Hill*, 589 F.2d 1344, 1352 (8th Cir.); *cert. denied*, 442 U.S. 919, 99 S.Ct. 2843, 61 L.Ed.2d 287 (1979); 8 MOORE'S FEDERAL PRACTICE ¶ 7.06[1] (2nd, 1985 Rev.). Rather, it is intended to give the defendant only that minimum amount of information necessary to permit the defendant to conduct his *own* investigation. *United States v. Manetti*, 323 F.Supp. 683, 696 (D.Del. 1971).

2

More importantly, a bill of particulars, like the indictment, is designed to define and limit the government's case.

*United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir. 1985).

In addition, the Third Circuit has "emphasized that the need for a bill of particulars is obviated in those cases where the Government supplements a detailed charging document with substantial discovery. In ruling on a request for a bill of particulars, the court should consider all information that as been disclosed to the defendant in the course of the prosecution, whether or not included in the indictment." *United States v. Hayes*, 2007 WL 3085998, at *1 (M.D.Pa. Oct. 19, 2007) (citing *United States v. Urban*, 404 F.3d 754, 772 (3d Cir. 2004); *United States v. Kenny*, 462 F.2d 1205, 1212 (3d Cir. 1972)).

"An indictment is generally deemed sufficient if it: (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007) (internal citations and quotations omitted). "[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit a defendant to prepare his defense and invoke double jeopardy" and thus an indictment will generally "satisfy the requirements where it informs the defendant of the statute he is charged with violating, lists the elements of a violation under the statute, and specifies the time period during which the violations occurred." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (internal citations and quotations omitted).

Here, Defendant requests the identification of alleged victims 1 through 3, specific identification of the forged documents referenced in Counts 7 through 12 of the Indictment, and for the identification of "any documents that establish 'wire communication' as referenced in" paragraph 17 of the Indictment. (Doc. 67 at ¶¶ 1-9). Defendant states that his "request is reasonable and necessary to define the scope of the allegations and prepare a defense," (Doc. 68 at 1), but provides no additional explanation in support of his Motion.[1]

Defendant does not allege that the Indictment is "too vague and indefinite" such that he cannot identify the "nature of the charges brought against him to adequately prepare his defense." *Addonizio*, 451 F.2d at 63-64. Nor could he. The Indictment adequately describes the nature of the alleged crimes, the specific statutes allegedly violated, and the time during which the violations allegedly occurred. (*See generally* Doc. 1). Furthermore, the Indictment has already been supplemented with thousands of pages of discovery, and "[t]his access to discovery further weakens the case for a bill of particulars here." *Urban*, 404 F.3d at 772 (citing *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979) ("Full discovery … obviates the need for a bill of particulars.")). Defendant's conclusory justification for his Motion fails to establish a specific need for a bill of particulars that the law requires for its issuance, especially in light of the "in excess of 17,000 pages of discovery," (Doc. 68 at 1) the Government has already produced to Defendant.

---

[1] Only one sentence out of Defendant's two-and-a-half-page Brief in Support of the Motion for Bill of Particulars (Doc. 68) provides the Court with the reason as to why Defendant believes he is entitled to a Bill of Particulars. (*See* Doc. 68 at 1 ("The above request is reasonable and necessary to define the scope of the allegations and prepare a defense.")).

Moreover, it appears Defendant wants the Government to walk him through its case against him by identifying each specific document upon which the Government based its charges and to identify each individual allegedly victimized by Defendant.  Defendant's request far exceeds the scope of a bill of particulars, and he appears to impermissibly structure his Motion for a Bill of Particulars "'as a vehicle for wholesale examination of the Government's files.'" *United States v. Leonelli*, 428 F.Supp. 880, 882 (S.D.N.Y. 1977) ("It is well settled that a bill of particulars is not an investigative tool for the defendant; it is not to be used 'as a vehicle for wholesale examination of the Government's files.'") (quoting *United States v. Mitchell*, 73 Cr. 439 (S.D.N.Y. Aug. 3, 1973)); *see also Smith*, 776 F.2d at 1111 ("A bill of particulars, unlike discovery, is not intended to provide the defendant with the fruits of the government's investigation."); *United States v. Johnson*, 218 F.Supp.3d 454, 458 (W.D.Pa. 2016) ("[T]he government has no obligation to produce an outline of the evidence it will offer at trial.").

For the aforementioned reasons, Defendant's Motion for a Bill of Particulars (Doc. 67) will be denied.

### III. MOTION FOR PRODUCTION OF EVIDENCE UNDER BRADY GIGLIO PERTAINING TO GUILT/INNOCENCE OR SENTENCING PHASES (DOC. 69)

Next, the Court will address Defendant's Motion for Production of Evidence under *Brady Giglio* Pertaining to Guilt/Innocence or Sentencing Phases ("Motion for Discovery") (Doc. 69).  In this Motion, Defendant "requests the production of discovery regarding the

guilt/innocence or sentencing phase of this case" and specifically identifies fourteen
categories of information of which he seeks disclosure. (Doc. 69 at 1-3).

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court identified a duty on the
part of the Government under the Due Process Clause to ensure that criminal trials are fair
by disclosing evidence favorable to the defendant so long as it is "material either to guilt or
punishment." 373 U.S. at 87. The Supreme Court extended the *Brady* rule when it decided
*Giglio v. United States*, 405 U.S. 150 (1972), requiring the Government to disclose evidence
that speaks to the credibility of prosecution witnesses. As explained by the Third Circuit,
this evidence is referred to "as *Giglio* material, [and] is a subset of *Brady* material insofar as
it addresses situations in which certain evidence about a witness's credibility or motivation
to testify exists, and where 'reliability of a given witness may well be determinative of guilt or
innocence.'" *United States v. Maury*, 695 F.3d 227, 249 (3d Cir. 2012) (quoting *Giglio*, 405
U.S. at 154).

Although *Giglio* is a subset of *Brady* material, the time for disclosure differs. While
*Brady* evidence must be turned over "in time for its effective use at trial," *Giglio* material
need not be produced prior to trial. *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983)
(holding that a defendant's due process rights are satisfied as long as evidence pertaining
to Government witness credibility is produced the day of their testimony). A panel of the
Third Circuit explained:

> Under *Brady*, a prosecutor is required to disclose evidence favorable to a
> defendant that is material to guilt or punishment. [*United States v. Risha*, 445

6

F.3d 298, 303 (3d Cir. 2006)].  The obligation to disclose such "*Brady* material" is "not based on any general constitutional right to discovery in criminal cases, but rather on a defendant's due process right to a fair trial."  *Higgs*, 713 F.2d at 42.  "Because *Brady* rests on the requirements of due process, our focus [is] on when disclosure is necessary to insure [the defendant] a fair trial."  *Id.* at 43.  "To constitute a *Brady* violation, the nondisclosure must do more than impede the defendant's ability to prepare for trial; it must adversely affect the court's ability to reach a just conclusion, to the prejudice of the defendant."  [*United States v. Starusko*, 729 F.2d 256, 262 (3d Cir. 1984)].  "No denial of due process occurs if *Brady* material is disclosed to [the defendant] in time for its effective use at trial."  *Higgs*, 713 F.2d at 44.

Under *Giglio*, the prosecution must disclose "information that [the defendant] could use on cross-examination to challenge the credibility of government witnesses," and a defendant's "right to a fair trial will be fully protected if disclosure [of such material] is made the day that the witnesses testifies," because "[d]isclosure at the time will fully allow [the defendant] to effectively use that information to challenge the veracity of the government's witnesses." *Higgs*, 713 F.2d at 44.  Thus, a defendant's "due process rights to a fair trial would be satisfied … as long as disclosure is made the day that the government witnesses are scheduled to testify in court."  *Id.*

*United States v. Bashir*, 738 F.App'x 743, 748-49 (3d Cir. 2018).  These minimal constitutional requirements do not prohibit a district court from setting a time, pretrial, for the disclosure of *Giglio* material: a district court "within its discretion, may order [*Giglio*] disclosure to ensure the effective administration of the criminal justice system."  *Higgs*, 713 F.2d at 44 n.6; *see also Starusko*, 729 F.3d at 261.

Here, Defendant makes fourteen requests for discovery in his Motion.  (Doc. 68 at ¶¶ 1-14).  With the exception of his request for the disclosure of all grand jury transcripts, Defendant fails to support his requests with specific arguments as to why he believes the requested evidence is either *Brady* or *Giglio* material. (*See generally* Doc. 70).  In fact,

Defendant only states, "[t]he material requested is believed to be *Brady* and *Giglio* material, and therefore, Defendant requests for all of the requested information to be turned over." (*Id.* at 2). Defendant's requests are too broad and too vague for the Court to evaluate with any precision. Defendant's failure to provide relevant legal authority and argument pertinent to each request is a further impediment to the proper evaluation of his asserted right to production. Nevertheless, the Court will address each request included in his Motion.

Defendant's first five requests for production of evidence in his Motion relate to financial reports and documents:

1. Any financial reports or documents pertaining to proceeds received by Mountain Lakes Abstract Co., Inc. or Scott Marinelli which relate to the six (6) properties identified in paragraph 7 of the Indictment.

2. Any financial reports or documents pertaining to proceeds received by Marek Tchorzewski which relate to the six (6) properties identified in paragraph 7 of the Indictment.

3. Any financial reports or documents pertaining to proceeds received by Anthony Malenowski which relate to the six (6) properties identified in paragraph 7 of the Indictment.

4. Any financial reports or documents pertaining to proceeds received by Marzenna Parych which relate to the six (6) properties identified in paragraph 7 of the Indictment.

5. Any financial reports or documents pertaining to proceeds received by Shatrughan Sinha and/or AASTHA Real Estate Investments, LLC which relate to the six (6) properties identified in paragraph 7 of the Indictment.

(Doc. 69 at ¶¶ 1-5).

In response, the Government represents that it "has disclosed all financial records in its possession to Marinelli." (Doc. 81 at 15). Furthermore, the Government explained that it "sent an email to counsel, dated July 12, 2022, that specifies which account each allegedly fraudulent money transfer went into." (*Id.*). Accordingly, it appears that Defendant has already received the evidence listed in the first five requests in his Motion; thus, the Court will deny Defendant's first five requests.

Next, Defendant requests "[e]lectronic or written correspondence between the United States Attorney's Office and/or its representatives and any agent or employee of Lending Homes Funding Corporation," "[e]lectronic or written correspondence between the United States Attorney's Office and/or its representatives and Attorney Edward Hayes," and "[e]lectronic or written correspondence between the United States Attorney's Office and/or its representatives and Attorney Daniel P. Lyons." (Doc. 69 at ¶¶ 6-8). At the outset, Defendant has failed to identify who Edward Hayes and Daniel P. Lyons are in relation to this case.[2] He also failed to provide any justification as to why he believes these documents fall under the purview of *Brady* or *Giglio*. The Government responded to Defendant's requests by stating that "any existing communications between the government and these parties do not fall under *Brady* or *Giglio*. If any future communications fall into this category, the government will readily provide the documents to Marinelli." (Doc. 81 at 15-16).

_____

[2] In its Brief in Opposition, the Government explains that "Edward Hayes represents First American Title Insurance and the late Daniel Lyons represented Marek Tchorzewski in civil actions related to these charges." (Doc. 81 at 15 n.4).

Without any opposing argument from Defendant besides the statement that he "believe[s]" the requested material falls under *Brady* or *Giglio*, the Court will deny these requests.

Defendant's next three requests ask for "[d]ocumentation evidencing [a] prior business relationship between Marek Tchorzewski and Scott Marinelli as it relates to the sale and/or purchase of real estate," "[d]ocumentation evidencing [a] prior business relationship between Shatrughan Sinha and Scott Marinelli as it relates to the sale and/or purchase of real estate," and "[d]ocumentation evidencing [a] prior business relationship between Marek Tchorzewski and Shatrughan Sinha as it relates to the sale and/or purchase of real estate." (Doc. 69 at ¶¶ 9-11). The Government represents that it "has turned over all documentation in its possession relating to the specified parties, whether it falls under *Giglio* or *Brady* or not" and it will "continue to provide Marinelli with *Brady* and *Giglio* materials when and if they come into the government's possession." (Doc. 81 at 16). Accordingly, it appears Defendant has already received these categories of documents and the Government has complied with its obligations under *Brady* and *Giglio* thus far. Therefore, the Court will deny these requests.

Defendant next requests "[a]ny documentation or evidence related to past or pending criminal investigations into Marek Tchorzewski, Shatrughan Sinha or AASTHA Real Estate Investments, LLC" and "[i]nformation pertaining to any pending, open investigations in which any government witness has not been charged but could be charged in the future." (Doc. 69 at ¶¶ 12-13). Defendant has not provided any evidence or argument to support his contention that there are or have been criminal investigations into Marek Tchorzewski,

Shatrughan Sinha, AASTHA Real Estate Investments, LLC, or unnamed government witnesses, nor has he provided caselaw to support that he is entitled to this information in the event it exists.  In the event that such criminal investigations exist and fall within the purview of *Brady* and/or *Giglio*, however, the Government affirmed that it "will provide any and all evidence relating to impeachment, including prior convictions" and "will review each circumstance, if one exists, and determine whether it should appropriately be disclosed under *Brady* and or *Giglio*." (Doc. 81 at 16).  Accordingly, the Court will deny this request.

The last request in Defendant's Motion for Discovery asks for "[a]ll grand jury transcripts related to this matter." (Doc. 69 at ¶ 14).  In his Brief in Support of his Motion, Defendant expands his request to include "any notes used by witnesses when testifying before the grand jury." (Doc. 70 at 3).  Defendant argues that "this case is unique in that Defendant gave a proffer statement prior to the initiation of grand jury proceedings herein" and he now "believes that statements he made during his proffer were used to obtain an indictment." (*Id.* at 3).  According to Defendant, if the Government used his proffer to obtain the Indictment, it would be grounds for a motion to dismiss the Indictment, but "without the grand jury transcript, Defendant is without the tools to present such motion." (*Id.* at 3-4).

The Government argues that Defendant "has failed to show any particularized need for advanced disclosure of any grand jury materials" and that Defendant "is just on a fishing expedition." (Doc. 81 at 22).  The Government contends that because Defendant "has failed to articulate even a flimsy basis for his belief that his proffer interview was used in the

11

grand jury proceeding and falsely asserts that it is unique to provide a proffer interview prior

to a grand jury proceeding," (*Id.* at 22-23), his request should be denied.

"The secrecy of grand jury proceedings is a necessary incident to the proper

functioning of the grand jury system." *United States v. Smith*, 123 F.3d 140, 148 (3d Cir.

1997); *see also Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 218

n.9 (1979) ("Since the 17th century, grand jury proceedings have been closed to the public,

and records of such proceedings have been kept from the public eye."). "The party moving

for court-ordered disclosure bears a heavy burden of proving to the court that 'the material

they seek is needed to avoid a possible injustice in another judicial proceeding, that the

need for disclosure is greater than the need for continued secrecy, and that their request is

structured to cover only material so needed.'" *United States v. Eisenberg*, 773 F.Supp. 662,

707 (D.N.J. 1991) (quoting *Douglas Oil*, 441 U.S. at 222). "To establish 'compelling

necessity,' a defendant must show that without the release of the grand jury materials, his

'defense would be greatly prejudiced or … an injustice would be done.'" *United States v.

Ramos*, 2014 WL 3808935, at \*4 (E.D.Pa. July 28, 2014) (quoting *United States v. Procter

& Gamble Co.*, 356 U.S. 677, 682 (1958)); *see also United States v. McDowell*, 888 F.2d

285, 289 (3d Cir. 1989) ("To support a motion for judicially ordered disclosure of grand jury

testimony, a party must show a particularized need for that information which outweighs the

public interest in secrecy.").

Here, Defendant claims that "[a]lowing disclosure of these transcripts early would

serve judicial economy and prevent potential problems on the eve of or in the midst of trial"

12

and "allow the issue [of whether the Government used Defendant's proffer to obtain the Indictment] to be fully and fairly addressed pretrial, as it should be." (Doc. 70 at 4). The Court remains unconvinced Defendant has met his burden of establishing a particularized need for grand jury transcripts. Defendant has not argued anywhere in his Motion that his "defense would be greatly prejudiced" or that "an injustice would be done" if the transcripts are not disclosed, *Procter & Gamble*, 356 U.S. at 682, nor has he argued that the "disclosure need exceeds the need for continued secrecy," *Douglas Oil*, 441 U.S. at 222.

Defendant's argument that his proffer may have been used to obtain the Indictment is generic, does not offer specific examples of why he believes his proffer was improperly used, and rests on speculation about what the Government *may* have done. *See United States v. Blackwell*, 954 F.Supp. 944, 966 (D.N.J. 1997) ("Conclusory or speculative allegations about what went wrong in a grand jury proceeding give no cause to question the regularity of the grand jury's functioning." (collecting cases)); *see also United States v. Williams*, 504 U.S. 36, 54 (1992) ("'It would run counter to the whole history of the grand jury institution to permit an indictment to be challenged on the ground that there was inadequate or incompetent evidence before the grand jury." (internal citations and quotations omitted)). Defendant has presented the Court with no evidence to support his claim, and his contention that disclosure of the grand jury transcripts will verify his belief that the Government improperly used his proffer is "insufficient to warrant disclosure of the information sought." *Blackwell*, 954 F.Supp. at 967. ("'[M]ere speculation' that evidence was improperly presented is insufficient to warrant disclosure of the information sought.")

Notably, Defendant asserts that "[i]t is settled that it is unlawful for prosecutors to utilize a proffer statement to obtain an indictment at the grand jury," (Doc. 70 at 3), and cites two cases – *United States v. Hubbell*, 530 U.S. 27 (2000) and *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991) – to support his argument.  However, neither case supports Defendant's proposition.  *Hubbell* addressed two discrete issues: "whether the Fifth Amendment privilege protects a witness from being compelled to disclose the existence of incriminating documents that the Government is unable to describe with particularity" and "if the witness produces such documents pursuant to a grant of immunity, whether 18 U.S.C. § 6002 prevents the Government from using them to prepare criminal charges against him." *Hubbell*, 530 U.S. at 29-30.  Neither issue addressed by the *Hubbell* Court directly or indirectly concerns statements made during proffers.  Similarly, *Poindexter* discusses compelled testimony and grants of immunity in accordance with 18 U.S.C. § 6002, but is silent on the issue of the Government's use of a proffer to obtain an indictment.  *See Poindexter*, 951 F.2d at 371.  *Hubbell* and *Poindexter* concern materially different facts in which the defendant provided compelled testimony after receiving a grant of immunity pursuant to 18 U.S.C. § 6002.

Here, Defendant did not receive immunity of any kind before agreeing to give a proffer statement to the Government.  This critical fact makes the cases Defendant cites in support of his contention that the Government may have improperly used his proffer to obtain an indictment irrelevant and inapplicable to his case.  Defendant's request for grand jury transcripts is "simply a fishing expedition" unsupported by fact or law, which this Court

will not permit. *See United States v. Weingold*, 69 F. App'x 575, 579 (3d Cir. 2003)

(affirming the District Court's denial of the defendant's request for disclosure of all grand jury

transcripts because the defendant "has not carried his burden of showing a particularized

need for the grand jury transcripts" and the "request ... was simply a fishing expedition by

the defendant") (internal citations and quotations omitted).  Accordingly, Defendant has

failed to show a particularized, compelling need for the disclosure of "[a]ll grand jury

transcripts relating to this matter."

In addition to the fourteen requests made in his Motion, Defendant included a

request for Jencks Act material in his Brief in Support of his Motion for Discovery.  (Doc. 70

at 2). [3]   The Jencks Act provides that "[a]fter a witness called by the United States has

testified on direct examination, the court shall, on motion of the defendant, order the United

States to produce any statement ... of the witness in the possession of the United States

which relates to the subject matter as to which the witness has testified."  18 U.S.C. §

3500(b).  The Jencks Act further provides that "no statement or report in the possession of

the United States which was made by a Government witness or prospective Government

witness (other than the defendant) shall be the subject of a subpoena, discovery, or

inspection until said witness has testified on direct examination in the trial of the case."  18

U.S.C. § 3500(a).  Similarly, the Federal Rules state:

> After a witness other than the defendant has testified on direct examination,
> the court, on a motion of a party who did not call the witness, must order an
> attorney for the government or the defendant and the defendant's attorney to
> produce, for the examination and use of the moving party, any statement of

---

[3] Defendant did not request Jencks Act material in his Motion for Discovery. (*See generally* Doc. 69).

the witness that is in their possession and that relates to the subject matter of
the witness's testimony.

FED R. CRIM. P. 26.2(a).

Thus, both the Jencks Act and the Federal Rules of Criminal Procedure make clear

that the Government does not need to turn over Jencks Act material until the witness whose

statement is at issue has testified on direct examination at trial.  As the Third Circuit stated,

"[t]he blunt command of the [Jencks Act] together with the unequivocal legislative history

has led to unbroken precedent in the Courts of Appeals denying to district courts the power

to compel production of the statements of government witnesses until conclusion of direct

examination at the trial."  *United States v. Murphy*, 569 F.2d 771, 773 (3d Cir. 1978); *see*

*also United States v. Moyer*, 726 F.Supp.2d 498, 513 (M.D.Pa. 2010) (denying Defendant's

motion for early production of material under the Jencks Act and finding that, where the

Government had agreed to provide the Jencks material three days prior to trial, "[i]t is not

within the power of the District Courts to accelerate" the Government's timetable for

disclosure); *Eisenberg*, 773 F.Supp. at 683 (denying Defendant's motion for disclosure of

the pretrial statements of a Government witness prior to that witness's testimony, citing to

the Jencks Act and Rule 26.2, and finding that although the Government stated that it would

disclose any *Jencks* Act material the day before the witness testified, "it is not required to do

so."); *United States v. D'Elia*, 2007 WL 2458487, at *7 (M.D.Pa. Aug. 24, 2007) (denying

Defendant's motion under the *Jencks* Act and Rule 26.2 to require the Government to

disclose Jencks Act material at least thirty days prior to trial).

Here, Defendant states that "[i]n addition to the *Brady/Giglio* material, there is *Jencks* material which may be independent or duplicative of the *Brady/Giglio* material" and he "requests that this Court enter an Order to compel the Government to provide early and complete disclosure of *Jencks* material[.]" (Doc. 70 at 2). The Government has represented that, "[c]onsistent with the practice of the United States Attorney's Office for the Middle District of Pennsylvania, all Jencks material will likely be turned over to Marinelli in the week prior to the commencement of trial." (Doc. 81 at 19). Regardless of whether the statements are ultimately disclosed the week before trial or during trial at the time contemplated by the Jencks Act, the caselaw "makes clear that the Court cannot mandate disclosure prior to the day on which the witness testifies at trial." *United States v. Grier*, 2012 WL 5614087, at * 5 (W.D.Pa. Nov. 5, 2012) *see also United States v. Maury*, 695 F.3d 227, 248 (3d Cir. 2012) ("[T]he government has no obligation to produce Jencks material until the witness has testified."). As such, the Court will deny Defendant's request to "compel the Government to provide early and complete disclosure of *Jencks* material[.]" (Doc. 70 at 2).

## IV. CONCLUSION

Based on the foregoing reasons, the Court will deny Defendant's Motion for Bill of Particulars (Doc. 67) and Motion for Production of Evidence Under Brady Giglio Pertaining to Guilt/Innocence or Sentencing Phases (Doc. 69).

Robert D. Mariani
United States District Judge

17