THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | 3:20-CR-282 |
| | : | (JUDGE MARIANI) |
| SCOTT MARINELLI, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

On November 3, 2020, Defendant Scott Marinelli was charged in a twelve count

Indictment (Doc. 1) with six counts of wire fraud in violation of 18 U.S.C. § 1343 and six

counts of aggravated identify theft in violation of 18 U.S.C. § 1028A(a)(1). (*See generally*

Doc. 1). Presently before the Court is Defendant's Motion to Suppress Evidence (Doc. 65)

wherein Defendant seeks to suppress "all evidence seized from 1071 Sunny View Road in

Mountainside, New Jersey." (Doc. 65 at 1). Defendant also requests that this Court hold a

*Franks* hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). (*Id.*). For the

reasons that follow, the Court will deny Defendant's Motion to Suppress and will deny

Defendant's request for a *Franks* hearing.

### II. FACTUAL BACKGROUND

Because the determination of Defendant's Motion depends on the information

contained in Affidavit in Support of the Search Warrant Application, the Court will include the

relevant portions of the Warrant Affidavit (Doc. 66-1) below:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search:

   a. the premises known as 1071 SUNNY VIEW ROAD, MOUNTAINSIDE, NJ 07092, UNION COUNTY, INCLUDING THE ATTACHED GARAGE, hereinafter the "**Subject Premises**," further described in Attachment A, and any locked or closed closets, crawl spaces, safes, file cabinets, and stationary or moveable containers therein, for the things described in Attachment B; and

2. I am currently serving as a Special Agent with the Federal Bureau of Investigation – Philadelphia Division and have been a Special Agent for twenty-one (21) years As a Special Agent with the FBI, I am an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18, United States Code, Section 1343 and 1341. I am thoroughly familiar with the information contained in this Affidavit, based upon the investigation that I have conducted with other experienced law enforcement officers, my communications with them and other witnesses, and my review of relevant documents and materials.

3. As a Special Agent with the FBI, I have participated in approximately over twenty (20) investigations involving fraudulent activity implicating prohibitions of false statements and mail fraud. During the course of these investigations, I have conducted or participated in the execution of search warrants, witness interviews, and document analysis in furtherance of these investigations. The execution of such search warrants has yielded substantial evidence, including, among other things, financial records, personal identifying information of victims, transactional logs, mail, and digital evidence (often derived from cellular telephone devices). Through my training, education, and experience, I have become familiar with the manner in which false financial statements are made, and mail is accomplished, the instrumentalities used in furtherance of the same, and the manner in which proceeds are kept by offenders.

4. This Affidavit is based on my personal knowledge from my participation in this investigation, my review of documents and other evidence, and my

conversations with other law enforcement officers.  In addition, I have reviewed reports and other documents prepared by law enforcement officers.  I have also reviewed documents and other records pertaining to the premises and individuals that are the subjects of this application, including but not limited to law enforcement records.  Where the contents of documents and the actions, statements, and conversations of other are reported herein, they are reported in substance and in part, except where otherwise indicated.

5.   Authority is sought to search the **Subject Premises** and to seize from it that which constitutes evidence, contraband, fruits, and instrumentalities in violation of Title 18, United States Code, Section 1341 (Mail Fraud) (the "Specified Federal Offense").  Such evidence consists of the items set forth in Attachment B to this Affidavit.

6.   Because this Affidavit is being submitted for the limited purpose of establishing probable cause, I have not included every detail of every aspect of the investigation.  Rather, I have set forth only those facts that I believe are necessary to establish probable cause to search the **Subject Premises**.  Unless specifically indicated, all conversations and statements described in this Affidavit are related in substance and in part.  All dates and times are approximate.

## PROBABLE CAUSE

7.   The FBI – Philadelphia Division, has been conducting an investigation of Scott Marinelli ("Marinelli") since November 2018 regarding the Specified Federal Offense.  In furtherance of this investigation, the FBI has relied upon information and documents supplied by victims, title insurance companies, and multiple witnesses associated with Marinelli's business ventures.

8.   On January 22, 2019, law enforcement received a complaint from Marek Tchorzewski ("Tchorzewski") regarding the fraudulent transfer of four real-estate properties that he owned to Aastha Real Estate Investments, LLC ("Aastha").  Tchorzewski stated that he met Marinelli several years ago (when Marinelli worked for Homestead Land Services). Tchorzewski stated that Marinelli had completed closings on real-estate deals on Tchorzewski's behalf on previous occasions.

9.  In late 2017, Marinelli approached Tchorzewski and stated that he had investors that were interested in purchasing houses. A verbal agreement for the purchase of twenty (20) houses was made between Marinelli and Tchorzewski. Marinelli provided Tchorzewski at $20,000 deposit on the twenty (20) properties (representing a $1,000 deposit per property). After several months of the properties not being sold by Marinelli, Tchorzewski requested an additional deposit to hold the properties as he was still paying taxes and maintenance on the same. Tchorzewski did not receive any additional funding and decided to put the properties back on the market.

10. On January 20, 2019, Tchorzewski received a call from Shatrughan Sinha ("Sinha"), and agent of Aastha. Sinha questioned Tchorzewski as to why the properties he purchased from Tchorzewski through Marinelli were never transferred to Aastha. Tchorzewski explained that he was unaware that any properties were sold and that he did not receive any money from these purported sales.

11. Upon reviewing the four properties that were reported as sold, Tchorzewski learned that they were done so without his or his family member's permission. Further, Tchorzewski learned that his signatures on the deeds and mortgage documents, as well as the signature of the notary public, were forged.

12. Specifically, with respect to 224 Sand Spring Road, Cresco, PA 18326, Tshorzewski learned that the deed was allegedly signed by Tshorzewski's wife's cousin (Marzenna Parzych) on March 6, 2018 and sold to Aastha for $78,000. The deed and mortgage was filed with the Monroe County Recorder of Deeds on January 3, 2019 (10 months after the supposed closing). The deed and mortgage was purportedly notarized by Donna K. Mowrer ("Mowrer"). The lender is recorded as Lending Home Funding Corporation for a mortgage of $96,300.

13. Marzenna Parzych, the alleged signature referenced in Paragraph 13, above was in Poland at the time the deed was signed for transfer. Further, the FBI interviewed Mowrer, the notary public on the financial documents referenced in paragraph 12, above. Mowrer stated that she did not notarize these documents and a review of her notary records revealed the same. Mowrer stated that her notary signature was forged. Mowrer stated that her notary stamp was unsecured in an office (Mountain Lakes Abstract and Lake Naomi Real Estate) drawer, to which Marinelli had access.

4

14. As to 2926 Melody Lane, Tobyhanna, PA 18466, Tshorzewski learned that the deed was allegedly signed by him on February 23, 2018 and sold to Aastha for $35,000.  The deed and mortgage was filed with the Monroe County Recorder of Deeds on January 3, 2019 (11 months after the supposed closing).  The deed and mortgage as Lending Home Funding Corporation for a mortgage of $50,000.

15. Tshorzewski stated that he did not sign the deed on 2926 Melody Lane for transfer and that his signature was forged.  Again, Mowrer denied notarizing this document and stated that her signature was forged.

16. With respect to 239 Dorest Road, Tobyhanna, PA 18466, Tshorzewski learned that he allegedly signed the deed on February 23, 2018 and sold to Aastha for $55,000.  The deed and mortgage was filed with the Monroe County Recorder of Deeds on January 3, 2019 (10 months after the supposed closing).  The deed and mortgage was purportedly notarized by Donna K. Mowrer.  The lender is recorded as Lender Home Funding Corporation for a mortgage of $66,500.

17. Again, Tchorzewski denied signing the deed for 239 Dorest Road, and stated his signature was forged.  Again, Mowrer denied signing the financial documents for this property and stated her signature was forged.

18. Regarding 6391 Cherokee Trail, Coolbaugh, PA 18466, Tshorzewski learned that he allegedly signed the deed on January 21, 2018 and sold to Aastha for $70,000.  The deed and mortgage was filed with the Monroe County Recorder of Deeds on January 18, 2019 (12 months after the supposed closing).  The deed and mortgage was purportedly notarized by Donna K. Mowrer.  The lender is recorded as Lending Home Funding Corporation for a mortgage of $52,000.

19. Tshorzewski denied signing the deed for 6391 Cherokee Trail and stated that his signature was forged.  Additionally, Mowrer denied notarizing the financial documents for this property and stated that her signature was forged.

20. In furtherance of this investigation, the FBI interviewed Jennifer Ryan Marinelli ("Jennifer"), the now estranged-wife of Marinelli of thirteen (13) years.  Jennifer stated that Marinelli used his vehicle (SUV) as a mobile

office, and stored boxes and documents related to his business in the same. Jennifer reported this vehicle to be "full" of document and boxes the last time she saw Marinelli.

21. In January 2019, Marinelli parked this SUV on the street in East Stroudsburg, PA.  At that time, Marinelli was arrested on an outstanding bench warrant issued by the Monroe County Court of Common pleas for failure to appear related to fraud charges (currently pending).  Jennifer reported Marinelli's vehicle was taken by Marinelli's mother, Carol Marinelli ("Carol") and her partner, John Wheatley ("Wheatley") and presumably brought to the **Subject Premises**.

22. After Marinelli's vehicle was returned to the **Subject Premises**, Jennifer contacted Carol and Wheatley to obtain it for purposes of sale.  Jennifer stated that Carol and Wheatley denied her immediate access to Marinelli's vehicle for several days.  Ultimately, Jennifer obtained Marinelli's vehicle with no boxes or financial documents inside.

23. As a result, the FBI went to the **Subject Premises** to interview Carol.  Carol stated that she picked up Marinelli's vehicle in January 2019.  At that time, Marinelli's vehicle contained mail, business records, brief cases, and clothing as Marinelli was living out of the vehicle.  Carol returned to the **Subject Premises** and stated that she placed the mail, business records, brief cases, and other documents she discovered into her basement and garage.  Carol stated she placed the clothing within the residence. Wheatley confirmed Carol's account of what occurred with the contents of Marinelli's vehicle.  Further, Carol reported another business associated of Marinelli (John Corino) delivered boxes to the **Subject Premises** containing business records after Marinelli's arrest in Monroe County. Carol reported that these business records were also in her basement and garage.

24. The FBI requested Carol's permission to view the items, to which Carol initially agreed.  Carol brought the FBI into the garage and basement and pointed out the business records as discussed.  While FBI agents were reviewing boxes to determine which boxes should be seized, Carol withdrew her consent and requested legal process to obtain the documents in her possession related to Marinelli's business activity.

25. In my training and experience, I have found that individuals and businesses typically maintain books and records where they are readily accessible, including at homes to which they access and places of business.

26. Based on my training and experience, original mortgage documents are returned via mail services to the originating lender as a matter of course. In this particular case, the mortgage lender did receive original mortgage documents as allegedly returned by Marinelli.

27. Based upon my training, experience and participation in numerous other investigations involving federal financial fraud, and on the information and other experience of other agents with whom I have spoken, I have found that it is common practice in the mortgage business to maintain records, including banking documents, deeds, and appraisals, as required by federal agencies' records retention and access policies.

28. Based upon my training, experience and participation in numerous other investigations involving business entities, I understand that operating businesses usually maintain records of their activities, including bank records, records of income, records of expenses, records of asset acquisition and disposal, and financial statements.

29. Based upon the foregoing, there is probable cause to believe that evidence of Specified Federal Offenses will be found at the **Subject Premises**, including but not limited to: mortgage documents, HUD-1 settlement statements, closing disclosures for buyers and sellers, title check stubs, reconciliation of real estate bank accounts, printouts of electronic communications, and shipping receipts for associated documents, used in connection with or in furtherance of the commission of the Specified Federal Offenses, including electronic devices.

30. For the reasons set forth above, including that the items of evidentiary value have been observed at the **Subject Premises**, I believe that there is probable cause to believe that the items to be seized, records and information related to the Specified Federal Offenses, will be located in at the **Subject Premises**.

## CONCLUSION

31. Based on the facts set forth in this Affidavit, I respectfully submit that there is probable cause to believe that there is currently concealed in the **Subject Premises** evidence and instrumentalities of violations of federal law, including violations of the Specified Federal Offenses, which evidence consists of the items set forth in Attachment B hereto.

32. WHEREFORE, I respectfully request that a search warrant be issued, pursuant to Rule 41 of the Federal Rules of Criminal Procedure, authorizing law enforcement personnel to search the **Subject Premises** set forth in Attachment A, as well as any locked or closed safes or other containers therein including, where necessary by using force to open such locked or closed containers and safes. I further request that the warrant authorize law enforcement personnel searching the **Subject Premises** to search for and to seize those items set forth in Attachment B hereto.

(Doc. 66-1 at 5-16).

## III. ANALYSIS

The Fourth Amendment guarantees

[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "To find probable cause to search, there needs to be a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Probable cause is a "fluid concept" that is fact-specific and "not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Jones*, 994 F.2d 1051, 1056 (3d Cir. 1993) (quoting *Gates*, 462 U.S. at 232).

8

Where, as here, a court is presented with a challenge to a judge's probable cause determination in the issuance of a warrant, it must limit its review to an inquiry of whether "the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 1055; *see Gates*, 462 U.S. at 236 ("A magistrate's determination of probable cause should be paid great deference by reviewing courts." (citations omitted)). The court must read the affidavit of probable cause submitted in support of the search warrant in its entirety and "in a commonsense and nontechnical manner." *United States v. Whitner*, 219 F.3d 289, 296 (3d Cir. 2000) (citing *United States v. Conley*, 4 F.3d 1200, 1206 (3d Cir 1993)). "In making this determination, the Court confines itself 'to the facts that were before the magistrate judge, i.e., the affidavit, and [does] not consider information from other portions of the record.'" *Id.* (quoting *Jones*, 994 F.2d at 1055).

Defendant raises multiple grounds for suppression in his Motion, including that the warrant was overbroad, lacked particularity, lacked probable cause, did not establish a nexus between the alleged crime and the property sought to be seized, and the information contained in the affidavit was stale. Defendant also argues that he is entitled to an evidentiary hearing. The Court will address each of Defendant's arguments in turn.

### a. Standing

As an initial matter, the Government raises the issue of standing in its Brief in Opposition, arguing that Defendant "lacks standing to challenge the search warrant" because he did not have a legitimate expectation of privacy in his mother's house. (Doc. 76

9

at 9-10).  In his Reply, "Defendant concedes that he does not have a possessory or proprietary interest in his mother's residence," but argues that "he had a possessory interest in the boxes of records seized" that is sufficient to establish standing.  (Doc. 82 at 1).

To challenge the reasonableness of a search or seizure, "[a] person challenging a search through a motion to suppress 'bears the burden of proving not only that the search … was illegal, but also that he had a legitimate expectation of privacy [in the place searched].'" *United States v. Rice*, 825 F.App'x 74, 76 (3d Cir. 2020) (quoting *United States v. Stearn*, 597 F.3d 540, 551 (3d Cir. 2010)); *see also United States v. Conley*, 856 F.Supp. 1010, 1015-16 (W.D.Pa. 1994).  As the Supreme Court explained, "[a] 'search occurs when an expectation of privacy that society is prepared to consider reasonable is infringed.  A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property."  *United States v. Jacobsen*, 466 U.S. 1652, 1656 (3d Cir. 1984) (footnotes omitted).  The "'capacity to claim the protection of the Fourth Amendment depends … upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the place invaded.'"  *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 (1978)).

Here, the Court finds, and Defendant concedes, that Defendant did not have a reasonable expectation of privacy in his mother's house.  However, Defendant did have a reasonable expectation of privacy in the boxes of business records, files, and other documents that were moved from his vehicle and brought into in his mother's basement and

garage because he had ownership and possessory interests in the contents of the boxes and the boxes themselves.[1] *See Conley*, 856 F.Supp. at 1020 ("[Defendant] has conceded that he had no reasonable expectation of privacy in premises on which the machines were located and the machines were clearly in plain view. His ownership and possessory interests in the machines themselves and their contents nonetheless remain protected by the Fourth Amendment."). Thus, the Court finds that Defendant has standing to challenge the sufficiency of the warrant.

### b. Particularity and Overbreadth

According to Defendant, "[t]he warrant is overbroad and insufficiently particular because it permitted the seizure of all of Defendant's legitimate business records and client data without specificity as to time, place, or transaction." (Doc. 66 at 4). First, it should be noted that Defendant does not cite any caselaw from within the Third Circuit to support his argument. (*See id.* at 5-11). More concerning, Defendant has misrepresented the caselaw he cited in support of his Motion.[2]

---

[1] There were also boxes of documents delivered to Defendant's mother's house by one of Defendant's business associates. (Doc. 66-1 at ¶ 23). Defendant had a reasonable expectation of privacy in these boxes as well.

[2] For example, Defendant materially changes a quote in from *United States v. Abrams*, 615 F.2d 541 (1st Cir. 1980), with the insertion of the phrase "is only." *Compare Abrams*, 615 F.2d at 545 ("We found the generic description sufficient to satisfy the particularity requirement of the fourth amendment where the affidavits established that the goods described in generic terms were likely to have been stolen and constituted a dominant part of the goods on the premises."); *with* Doc. 66 at 6 ("A 'generic description [is only] sufficient to satisfy the particularity requirement of the fourth amendment where the affidavits established that goods described in generic terms were likely to have been stolen and constituted a dominant part of the goods on the premises." (quoting *Abrams*, 615 F.2d at 545)).

"General warrants violate the Fourth Amendment because they essentially authorize

'a general exploratory rummaging in a person's belongings." *United States v. Yusuf*, 461

F.3d 374, 393 (3d Cir. 2006) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467

(1971)); *see also Andresen v. Maryland*, 427 U.S. 463, 480 (1976).  Pursuant to the Fourth

Amendment, "'a warrant may not be issued unless . . . the scope of the authorized search is

set out with particularity.'"  *United States v. Fattah*, 858 F.3d 801, 819 (3d Cir. 2019)

(quoting *Kentucky v. King*, 563 U.S. 452, 459 (2011)).

> Particularity has three components: 'First, a warrant must identify the specific
> offense for which the police have established probable cause.  Second, a
> warrant must describe the place to be searched.  Third, the warrant must
> specify the items to be seized by their relation to designated crimes."  *United
> States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013) (citations omitted).
> Ultimately, the particularity requirement intends that 'nothing is left to the
> discretion of the officer executing the warrant.'  *Marron* [*v. United States*, 275
> U.S. 192, 196 (1927)].

*United States v. Perez*, 712 F. App'x 136, 138-39 (3d Cir. 2017).

Here, the warrant attachment describing the property to be seized reads as follows:

1. All records and information relating to violations of Title 18, United States
   Code, Section 1341 (Mail Fraud), including but not limited to:

   a. Records, including electronic communications, and information
      relating to real estate transactions;

   b. Financial documents, including: mortgage forms, HUD-1 settlement
      statements, closing disclosures for buyers and sellers, title policies,
      title commitments, deeds, transaction slips, check stubs, and
      reconciliation of real estate bank accounts.

   c. Ledgers, notebooks, records, notes, or papers pertaining to real
      estate transactions, including but not limited to lists and records of

> business transactions, monies received, and cash payments for the
> same.
>
> d. Brief cases, boxes, plastic storage containers, locked cabinets, and
> other types of locked or closed containers used to contain records,
> documents, financial instruments, and other items of the sort
> described in the subparagraphs above.  Law enforcement officers
> executing this Warrant are specifically authorized to open any such
> locked safes or containers including, where necessary, by using
> force.

(Doc. 66-1 at 19).  Defendant claims this description of the property to be seized "is littered with expansive 'catchall categories' of generic documents set forth in a laundry-list fashion without linkage to the specifically suspected criminal conduct." (Doc. 66 at 7).

The Court disagrees and finds that the warrant was not overbroad and was sufficiently particularized.  First, the warrant specifies both the place to be searched and the items to be seized in relation to a designated crime.  *See Perez*, 712 F. App'x at 138-39. "The property to be searched is 1071 Sunny View Road, Mountainside New Jersey 0792, including the garage, located within Union County." (Doc. 66-1 at 18).  The items to be seized are set out in the detailed list recited above that includes records, financial documents, "ledgers, notebooks, records, notes or papers pertaining to real estate transactions," and "brief cases, boxes, plastic storage containers, locked cabinets, and other types of locked or closed containers used to contain records, documents, financial documents, financial instruments, and other items of the sort." (*Id.* at 19).  Mail fraud, 18 U.S.C. § 1341, is the designated offense identified by the warrant. (*Id.*).

13

Defendant argues that the warrant lacks particularity because it does not specify a time frame from which the records may be seized and does not specify what transaction records may be seized. (Doc. 66 at 8). However, the absence of a time frame or a provision limiting the temporal scope of the search to a particular time is not required for a warrant to be sufficiently particularized or not overbroad.[3] *See United States v. Stimpson*, 2022 WL 784560, at *3 (E.D.Pa. March 15, 2022) ("The absence from the warrant of a provision limiting the search and seizure to documents pertaining to the time period of the scheme [does] not make the warrant 'so facially deficient' 'as to render official belief in its [legality] entirely unreasonable.'" (quoting *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents*, 307 F.3d 137, 151 (3d Cir. 2002)). As the Government argues, "it would be difficult to place a time frame on the records essential to this investigation because there could be evidence that Marinelli was planning the alleged fraud for years, even prior to 2017, based upon his lengthy relationship with the victim." (Doc. 76 at 12). *See United States v. Smith*, 2021 WL 2982144, at *10 (D.D.C. July 15, 2021) ("Warrants need not contain specific time limits when dates of specific documents relevant to the offenses at issue could not have been known to the Government, or when evidence that dates from outside of the time period described in the warrant affidavit may be

---

[3] The four allegedly fraudulent real estate transactions described in the affidavit of probable cause provide dates on which the alleged frauds occurred. (*See* Doc. 66-1 at ¶¶ 11-19).

14

relevant to the activity within the time period." (internal citations and quotations omitted)).

Thus, the affidavit's lack of time frame does not make it overbroad or insufficiently particular.

Defendant argues that "Attachment B to the warrant [which describes the property to be seized] provides no limitation at all on the agents executing the warrant, as the warrant encompassed virtually every document that one might expect to find in a real estate attorney's office." (Doc. 66 at 8 (internal citations, quotations, and brackets omitted)). He also contends that "because the warrant seeks business records, not contraband, … generic description of the items to be seized is constitutionally forbidden." (*Id.*).

In a case such as this, where there is an alleged complicated fraud scheme spanning the course of at least one year, "it is difficult to conclude how the Government could have more narrowly tailored the warrant" in this investigation. *See Yusuf*, 461 F.3d at 396. In a case addressing overbreadth and particularity issues, the Supreme Court stated:

> Under investigation was a complex real estate scheme whose existence could be proved only by piecing together many bits of evidence. Like a jigsaw puzzle, the whole "picture" of petitioner's false-pretense scheme … could be shown only by placing in the proper place the many pieces of evidence that, taken singly, would show comparatively little. The complexity of an illegal scheme may not be used a shield to avoid detection when the State has demonstrated probable cause to believe that a crime has been committed and probable cause to believe that evidence of this crime is in the suspect's possession.

*Andresen v. Maryland*, 427 U.S. 463, 480 n.10 (1976). Similarly, the Third Circuit also addressed an overbreadth challenge to a warrant, explaining

> The warrant at issue cannot be invalidated as a general warrant for it does not vest the executing officers with unbridled discretion to conduct an exploratory rummaging through appellees' papers in search of criminal evidence. Rather,

15

the warrant's clauses describe in both specific and inclusive generic terms what
is to be seized: "all folders … all checks … all general ledgers (and) all
correspondence …"  By directing the searching officers to seize all of these
items, the magistrate, rather than the officer, determined what was to be seized.

*United States v. Christine*, 687 F.2d 749, 753 (3d Cir. 1982).

Here, the property to be seized is described "in both specific and inclusive generic

terms" and did not "vest [agents executing the warrant] with unbridled discretion to conduct

an exploratory rummaging through [Defendant's] papers in search of criminal evidence." *Id.*

(*See* Doc. 66-1 at 19).  The warrant did not authorize a search and seizure that exceeds the

scope of the probable cause described in the affidavit of probable cause.  *Christine*, 687

F.2d at 753 ("The Fourth Amendment dictates that a magistrate may not issue a warrant

authorizing a search and seizure which exceeds the ambit of the probable cause showing

made to him.").

"[T]he breadth of items to be searched depends upon the particular factual context of

each case and also the information available to the investigating agent that could limit the

search at the time the warrant application is given to the magistrate." *Yusuf*, 461 F.3d at

395.  Here, the FBI was investigating Defendant for fraudulent real estate transactions and

had evidence of at least four allegedly fraudulent transactions facilitated by Defendant,

which are described in detail in the affidavit of probable cause.  (Doc. 66-1 at ¶¶ 11-19).

Although Defendant may have conducted legitimate real estate transactions in addition to

allegedly fraudulent transactions, "[t]he complexity of an illegal scheme may not be used a

shield to avoid detection when the State has demonstrated probable cause to believe that a

16

crime has been committed and probable cause to believe that evidence of this crime is in the suspect's possession." *Andresen*, 427 U.S. at 480 n.10.

For the aforementioned reasons, the Court finds that the warrant authorizing the search of 1071 Sunny View Road, Mountainside, New Jersey 07092 and the seizure of documents and records described in the warrant was not overly broad and was sufficiently particularized. Accordingly, the Court will deny Defendant's Motion on these grounds

### c. Nexus

Defendant next contends that the warrant lacks probable cause because "there is absolutely no nexus between the crimes for which there was probable cause and the files in Defendant's vehicle." (Doc. 66 at 13). According to Defendant, "[t]he probable cause was limited to four transactions or four files. No facts were alleged to believe the files were in the vehicle." (*Id.* at 13-14).

To find probable cause to search, there must be "a fair probability that contraband or evidence of a crime will be found in a particular place." *Burton*, 288 F.3d at 103. This analysis focuses on the nexus between the illegal activity and the place to be searched. *Id.* As stated by the Third Circuit,

> Although every affidavit ideally would contain direct evidence linking the crime with the place to be searched, a magistrate may issue a search warrant even without direct evidence' that the item sought is in the place to be searched. *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010). "Probable cause can be, and often is, inferred from the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide evidence." *Id.* (internal quotation marks and brackets omitted).

17

*United States v. Epps*, 570 F.App'x 197, 200 (3d Cir. 2014).

Defendant's argument that "[t]here is no nexus between the crime alleged in the affidavit and the property sought to be seized," (Doc. 66 at 12), is without merit. The affidavit describes the alleged real estate frauds allegedly perpetrated by Defendant. (Doc. 66-1 at ¶¶ 10-19). Agent Phillips affirmed that that, based on her "training and experience, original mortgage documents are returned via mail services to the originating lender as a matter of course" and "[i]n this particular case, the mortgage lender did receive original mortgage documents as allegedly returned by Marinelli." (*Id.* at ¶ 26). She also affirmed that, based on her "training, experience, and participation in numerous other investigations involving federal financial fraud, ... it is common practice in the mortgage business to maintain records, including banking documents, deeds, and appraisals, as required by federal agencies' records retention and access policies." (*Id.* at ¶ 27). Defendant's estranged wife stated that he used his car as a "mobile office, and stored boxes and documents related to his business in the same." (*Id.* at ¶ 20). Defendant's mother brought the boxes of documents from Defendant's car, and the boxes of documents delivered to her home by Defendant's associate, into her basement and garage. (*Id.* at ¶ 23). Defendant's mother showed FBI agents the boxes of documents she put in her basement and garage. (Doc. 66-1 at ¶ 24).

The Court finds that the information summarized above makes clear that the affidavit sufficiently established a sufficient nexus between the place to be searched (Defendant's

mother's house), the crime alleged in the warrant (mail fraud), and the property to be

sought, which is described in Attachment B to the warrant. Thus, the Court will deny

Defendant's Motion to Suppress on the basis that there was "no nexus between the crime

alleged in the affidavit and the property to be sought." (Doc. 66 at 12).

### d. Stale Evidence

Defendant next argues that the information contained in the warrant was stale and

thus cannot support a finding of probable cause. (Doc. 66 at 14-16). Defendant claims that

because "[t]he last date mentioned in the affidavit of probable cause is January 2019," and

"[t]he search warrant was not applied for or executed until March 26, 2019 … [t]he warrant

established probable cause that certain records were present in the Subject Premises in

January 2019. This information was certainly stale on March 26, 2019." (Doc. 66 at 15).

The age of the information contained in a warrant is a factor in determining probable

cause. *United States v. Urban*, 404 F.3d 754, 774 (3d Cir. 2005) (quoting *United States v.*

*Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002)). "Age alone, however, does not determine

staleness. … Rather, we must also examine the nature of the crime and the type of

evidence." *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993). "The 'likelihood that

the evidence sought is still in place depends on a number of variables, such as the nature of

the crime, of the criminal, of the thing to be seized, and of the place to be searched.'"

*United States v. Eckenrode*, 2008 WL 2736393, at \*3 (E.D.Pa. July 10, 2008); (quoting

*United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir. 1983)). "[I]f the suspected activity 'is

19

of a protracted and continuous nature the passage of time becomes less significant,' and

'where the items are created for the purpose of preservation as are business records, the

passage of time is also less significant.'" *United States v. Dougherty*, 541 F.Supp.2d 734,

742 (3d Cir. 2008) (quoting *Ninety-Two Thousand Four Hundred Twenty-Two Dollars &*

*Fifty-Seven Cents*, 307 F.3d at 148).

    In this case, Defendant argues that "[t]here was no particular reason to believe that

the documents, present in [his mother's] home in January 2019, would have still been

present there on March 26, 2019" because "[t]he information contained in the affidavit of

probable cause leads to the inevitable conclusion that the documents were only being

stored at the Subject Premises *temporarily*." (Doc. 66 at 15 (emphasis in original)).  This is

incorrect.  Nothing in the affidavit suggests that the storage of documents in Defendant's

mother's home was temporary.  To the contrary, the act of transferring many boxes of

documents from Defendant's car to his mother's basement and garage, Defendant's

estranged wife obtaining Defendant's vehicle for purposes of sale "with no boxes or financial

documents inside," and Defendant's business associate dropping off boxes of business

records to Defendant's mother suggests that Defendant's mother's basement and garage

was the long-term storage arrangement for his records.  (Doc. 66-1 at ¶¶ 22-23).

    In addition, the items listed under "property to be seized" "are not of a transient

nature and were created in order to be preserved," because they are business records

created for the purpose of recordkeeping and preservation.  *See Dougherty*, 541 F.Supp.2d

20

at 742 ("Here, the alleged criminal activity is ongoing in nature and many of the items to be

seized are not of a transient nature and were created in order to be preserved."). 

Furthermore, Agent Phillips affirmed that based on her "training, experience, and

participation in numerous other investigations involving federal financial fraud, … it is

common practice in the mortgage business to maintain records, including banking

documents, deeds, and appraisals, as required by federal agencies' records retention and

access policies." (Doc. 66-1 at ¶ 27).

Accordingly, the probable cause information contained in the affidavit of probable

cause in support of the search warrant was not stale, and the Court will deny Defendant's

Motion to Suppress on this ground.

### e. Franks *Analysis*

In *Franks v. Delaware*, 438 U.S. 154 (1978), the United States Supreme Court held:

> where the defendant makes a substantial preliminary showing that a false
> statement knowingly and intentionally, or with reckless disregard for the truth,
> was included by the affiant in the warrant affidavit, and if the allegedly false
> statement is necessary to the finding of probable cause, the Fourth Amendment
> requires that a hearing be held at the defendant's request. In the event that at
> that hearing the allegation of perjury or reckless disregard is established by the
> defendant by a preponderance of the evidence, and, with the affidavit's false
> material set to one side, the affidavit's remaining content is insufficient to
> establish probable cause, the search warrant must be voided and the fruits of
> the search excluded to the same extent as if probable cause was lacking on
> the face of the affidavit.

*Franks*, 438 U.S. at 155-56. Thus, *Franks* established a two-part test to allow a defendant

to overcome the presumption that an affidavit of probable cause supporting a search

21

warrant is valid.  *Yusuf*, 461 F.3d at 383.  First, a criminal defendant must make a

"substantial preliminary showing" to overcome the presumption that the affidavit supporting

the search warrant is valid.  *Id.*  Only if this initial showing is made is a defendant entitled to

a *Franks* hearing.  *Id.*

> *Franks* elucidated the initial showing required:
>
> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.  Allegations of negligence or innocent mistake are insufficient . . . Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Franks*, 438 U.S. 171-72.  To overcome the presumption of validity a defendant must do

more than construct a self-serving statement which refutes the warrant affidavit.  *Id.* at 171;

*see also United States v. Reed*, 726 F.2d 339, 342 (7th Cir. 1984); *United States v. Strube*,

1997 WL 33482969, at *3 (M.D.Pa. July 24, 1997) (supporting statements from the

defendant and his wife self-serving).

> In determining whether a statement was recklessly made,
>
> the rule is that an assertion is made with reckless disregard when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.  This definition provides two distinct ways in which

22

conduct can be found reckless: either the affiant actually entertained serious doubts; or obvious reasons existed for him to do so, such that the finder of fact can infer a subjectively reckless state of mind.

*United States v. Brown*, 631 F.3d 638, 645 (3d Cir. 2011) (internal citations and quotations omitted).  Similarly, omissions are made with reckless disregard for the truth "if an officer withholds a fact in his ken that 'any reasonable person would have known that this was the kind of thing the judge would wish to know.'"  *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (quoting *United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir. 1993)).  An omission or assertion is "material" when "probable cause does not exist under the corrected affidavit."  *Yusuf*, 461 F.3d at 383.

In sum, a defendant must "allege with specificity what was false in the affidavit, must provide proof, must allege that the affiant had a culpable state of mind, and must allege that the remaining information is insufficient to support a finding of probable cause."  *United States v. Yokshan*, 431 F. App'x 170, 173 (3d Cir. 2011) (citing *Franks*, 438 U.S. at 171-72).

Here, Defendant argues that the "affidavit of probable cause makes numerous material omissions that affect the determination of probable cause."  (Doc. 66 at 17).  According to Defendant, he is entitled to a *Franks* hearing because

[d]espite the affiant knowing it not to be true, the affidavit purposely paints the picture that Defendant was not running a legitimate business.  In doing so, she omits the following relevant information:

- Defendant was the CEO of Mountain Lakes Abstract Company.

- Defendant had an ownership interest in Mountain Lakes Abstract Company.

23

- Mountain Lakes Abstract Company is a legitimate business operating in the field of real estate.

- The vast majority of the real estate transactions conducted by Defendant and Mountain Lakes Abstract company were legitimate.

- The alleged victims were clients of Mountain Lakes Abstract Company.

- Defendant had numerous offices and locations where he kept business files.

All of the foregoing omissions vitiate any purported probable cause contained in the affidavit, especially in light of the rules for legitimate businesses. Had they been contained, the likelihood is that the warrant would have been denied.

(*Id.* at 17-18).

Defendant's argument that the "affidavit purposely paints the picture that Defendant was not running a legitimate business" is without merit. The affidavit was submitted in support of a warrant to search for and seize "evidence, contraband, fruits, and instrumentalities of the commission of federal offenses in violation of Title 18, United States Code, Section 1341 (Mail Fraud)." (Doc. 66-1 at 4). The central contention of the charges against Marinelli is that he allegedly defrauded victims through schemes involving his business, so it is unsurprising that the affidavit of probable cause "paints the picture that Defendant was not running a legitimate business." (*See* Doc. 66 at 18).

Defendant presents no evidence to suggest that Agent Phillips "actually entertained serious doubts [as to the accuracy of the information in the affidavit]; or obvious reasons existed for [her] to do so." *Brown*, 631 F.3d at 645 (defining "reckless disregard" in the

24

.

*Franks* context).  Indeed, Agent Phillips had no reliable information to support the statement that "Mountain Lakes Abstract Company is a legitimate business operating in the field of real estate" (Doc. 66 at 18), or that "[t]he vast majority of the real estate transactions conducted by Defendant and Mountain Lakes Abstract company were legitimate," (*id.*). (*See* Doc. 76 at 24 ("Agent Phillips had no reliable information at the time of the application for the warrant that Marinelli was in fact running a legitimate business or that the majority of transactions were legitimate because of the number of allegations of criminal activity involved with Marinelli's business dealings.")).  Defendant's claim that his business was "legitimate" is fundamentally at odds with the investigation into Defendant, and the conclusory statement that he operated a legitimate business does not refute the specific, reliable information contained in the affidavit of probable cause.  *See Strube*, 1997 WL 33482969, at *3 ("A defendant's own self serving statements that purport to refute the affidavit are insufficient to make the substantial preliminary showing necessary to overcome the presumption that a search warrant affidavit is valid." (citing *Reed*, 726 F.2d at 342)).

Defendant also contends that the affidavit should have included Defendant's status as CEO of Mountain Lakes Abstract and the fact that Defendant had an ownership interest in Mountain Lakes Abstract.  (Doc. 66 at 18).  Assuming *arguendo* that Agent Phillips intentionally or recklessly omitted these facts from the affidavit, Defendant fails to explain how his position as CEO or his ownership interest in Mountain Lakes Abstract has any relevance whatsoever to the Magistrate Judge's probable cause inquiry.  Individuals who

25

claim an ownership interest in a company or who are company executives still have the capacity to engage in criminal conduct, so the inclusion of these facts into the affidavit would have made no difference in the Magistrate Judge's determination of probable cause. Thus, this omission does not entitle Defendant to a *Franks* hearing.

Defendant next claims that the affidavit should have stated that the "alleged victims were clients of Mountain Lakes Abstract Company." (Doc. 66 at 18). Defendant does not offer any analysis explaining why or how this fact would impact probable cause if it were included in the affidavit. If the alleged victims of Defendant's alleged scheme were also clients of Mountain Lake Abstract Company, that would have no bearing on whether there they were victimized by Defendant or not and, more importantly, it would not be material to whether there are sufficient facts alleged in the affidavit to support a finding of probable cause. *See United States v. Livingston*, 445 F. App'x 550, 556 (explaining that for a *Franks* inquiry dealing with an omission, the main inquiry is "whether, when the omitted facts are added to the affidavit, probable cause would still exist").

Finally, Defendant claims that "Defendant had numerous offices and locations where he kept business files" was recklessly or intentionally omitted from the affidavit. Defendant fails to provide the Court with addresses for the "numerous offices and locations where he kept business files" or other evidence, such as an affidavit or otherwise reliable statement, to substantiate this claim. The only indication that Marinelli had documents in places other than his vehicle is from the FBI's summary of its March 26, 2019, interview with Carol

26

Marinelli, Defendant's mother, which states that a friend of Defendant's "contacted CAROL and advised he wished to drop off paperwork belonging to [Defendant] at CAROL's residence. [Defendant] had been using office space at [redacted]'s law firm prior to January 2019." (Doc. 76-3, Ex. C at 4). However, even if Defendant kept documents in places other than his vehicle, that does not change the fact that Agent Phillips had reliable information from multiple people that Defendant stored documents and business records in his vehicle.

As reported in the affidavit, the FBI interviewed Jennifer Marinelli, Defendant's estranged wife, who "stated that Marinelli used his vehicle (SUV) as a mobile office and stored boxes and documents related to his business in the same," and she "reported this vehicle to be 'full' of document and boxes the last time she saw Marinelli." (Doc. 66-1 at ¶ 20). The FBI also spoke with Carol Marinelli who explained that when Defendant's vehicle was brought to her house after Defendant was arrested on an outstanding bench warrant in January 2019, the vehicle "contained mail, business records, brief cases, and clothing as Marinelli was living out of the vehicle," all of which she took out of Defendant's vehicle and placed in her basement and garage. (*Id.* at ¶ 23). John Wheatley, Carol Marinelli's partner, "confirmed Carol's account of what occurred with the contents of Marinelli's vehicle." (*Id.*). Finally, "Carol brought the FBI into the garage and basement and pointed out the business records as discussed." (*Id.* at ¶ 24; Doc. 76-3, Ex. C at 4).

The information recited in the affidavit obtained from Jennifer Marinelli, Carol Marinelli, John Wheatley, and the FBI agents' own observations of the documents all

supported a finding of probable cause for the property to be seized. (*See* Doc. 66-1 at 19).

Had Agent Phillips included the allegation that "Defendant had numerous offices and

locations where he kept business files," (Doc. 66 at 18), the facts recited above still would

have supported a finding of probable cause to search the property in question. In other

words, the alleged omission identified by Defendant is not material to probable cause.

Thus, Defendant has not met his burden to make a "substantial preliminary showing" to

overcome the presumption that the affidavit of probable cause is valid.

The Court also notes that Defendant has not submitted "[a]ffidavits or sworn or

otherwise reliable statements of witnesses" to support his allegations, nor did he

"satisfactorily explain[ ]" the absence of such evidence. *See Franks*, 438 U.S. at 171.

Defendant only says, "pursuant to interviews conducted of Carol Marinelli, counsel avers

that if she were allowed to testify at the Suppression Hearing, she would testify that the

statements attributed to her by Agent Phillips are inaccurate. Specifically, she would testify

that at no time did she describe the contents of the boxes as business records." (Doc. 66 at

18-19). Instead of obtaining an affidavit or otherwise reliable statement from Carol Marinelli,

Defendant only provides the Court with a synopsis of what she may testify to in the future,

and he fails to explain the relevance of Carol's future testimony. As stated above,

Defendant "must do more than construct a self-serving statement which refutes the warrant

affidavit." *Franks*, 438 U.S. at 171; *Reed*, 726 F.2d at 342 (7th Cir. 1984); *see also Strube*,

1997 WL 33482969, at *3.

28

Defendant has not met his burden of "prov[ing] by a preponderance of the evidence that probable cause does not exist under the corrected affidavit." *Yusuf*, 461 F.3d at 383. None of the statements Defendant alleges Agent Phillips recklessly or intentionally omitted from the affidavit, taken separately or together, impact the probable cause inquiry in any way; thus, the alleged omissions are not material to a finding of probable cause. Accordingly, Defendant is not entitled to a *Franks* hearing based on statements omitted from the probable cause affidavit.

## V. CONCLUSION

For the reasons stated above, Defendant's Motion to Suppress Evidence (Doc. 65), including his request for a *Franks* hearing, will be denied.

Robert D. Mariani
United States District Judge